UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No.: 2:12-cv-00562-JES-DNF

BRIAN BISHOP,

 Plaintiff,

vs.

LIPMAN AND LIPMAN, INC., LFC
ENTERPRISES, INC., LFC
AGRICULTURAL SERVICES, INC.,
FARM OP, INC., LFC MANAGEMENT
SERVICES, INC., ROBERT KENT
SHOEMAKER, JR., LARRY LIPMAN,
TOBY PURSE, JAMIE WILLIAMS, MAX JAIME
WEISINGER, AND HERNAN PARRA,

 Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS COUNTS II, III, IV, AND V OF THE COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Defendants Lipman and Lipman, Inc., LFC Enterprises, Inc., LFC Agricultural Services, Inc., Farm Op, Inc., LFC Management Services, Inc., Robert Kent Shoemaker, Jr., Larry Lipman, Toby Purse, Jamie Williams, Max Jaime Weisinger, and Hernan Parra (hereinafter collectively referred to as "Defendants"), by and through the undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move that Counts II (Alleged Civil Conspiracy), III (Alleged RICO Violation, pursuant to 18 U.S.C. §1962(C)), IV (Alleged RICO Violation, pursuant to 18

§ U.S.C. 1962(D)), and V (Alleged Violation of Florida RICO Act, pursuant to Fla. Stat. 772.101) be dismissed for failure to state a claim upon which relief can be granted.

Count II is properly dismissed because the intracorporate conspiracy doctrine bars Plaintiff's claim of a conspiracy between the Defendant corporation and its agents acting within the scope of their employment. *See Dickerson v. Alachua County Commission*, 200 F.3d 761, 767 (11th Cir. 2000). Counts III and IV are properly dismissed for failure to assert a viable civil RICO cause of action. Plaintiff has not, as a matter of law, pled that he was "injured in his business or property by reason of" any act of racketeering; thus, his Complaint fails to satisfy the RICO proximate cause requirement, as set forth by the Supreme Court in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). Lastly, Count V, Plaintiff's Florida RICO Act claim, is properly dismissed for the same reasons as Plaintiff's claims under the federal RICO counterparts.

## I. STANDARD OF LAW.

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).[1] Determining the propriety of granting a motion to dismiss requires that the Court accept the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29

---

[1] The Federal Rules of Civil Procedure "require a heightened pleading standard for claims involving RICO[.]" *Levitan v. Patti et al.*, 2011 U.S. Dist. LEXIS 34979, *18 (N.D. Fla. Feb. 8, 2011) (citing Fed. R. Civ. P. 9(b), *Brooks v. Blue Cross/Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) (plaintiff failed to plead RICO claim with particularity).

F.3d 1480, 1483 (11th Cir. 1994). However, a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, (2007) (internal citations omitted). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## II. LEGAL ANALYSIS.

### A. Plaintiff Fails to State a Claim for Civil Conspiracy

Count II of Plaintiff's Complaint asserts a claim for civil conspiracy; however, because the "intracorporate conspiracy doctrine bars allegations of conspiracy between agents of the same organization," Count II should be dismissed. *See Lapar v. Potter*, 395 F.Supp.2d 1152, 1157 (M.D.Fla. Oct. 19, 2005) (granting Rule 12(b)(6) motion to dismiss civil conspiracy count) (citing *Dickerson v. Alachua County Commission*, 200 F.3d 761, 767 (11th Cir. 2000) (reh'g en banc denied, 229 F.3d 1171 (11th Cir. 2000) (cert. dismissed, 530 .S. 1285 (2000)); *see also Robb v. Rahi Real Estate, et al.*, 2011 U.S. Dist. LEXIS 55119, *11 (S.D.Fla. May 23, 2011) (dismissing civil conspiracy count with prejudice). As the Eleventh Circuit Court of Appeals has explained:

> Under the intracorporate conspiracy doctrine, *a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation.* This doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to the

> corporation, so that all of their acts are considered to be those of a single legal actor." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981); *see also United States v. Hartley*, 678 F.2d 961, 970 (11th Cir.1982). The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself.

*Dickerson*, 200 F.3d at 767 (emphasis added).

In the instant case, Plaintiff's civil conspiracy claim fails as a matter of law because Plaintiff merely alleges that the individual Defendants—all of whom were agents of corporate Defendant Lipman and Lipman, Inc.—conspired with each other in furtherance of the corporate enterprise. More specifically, Plaintiff alleges in Count II the existence of a civil conspiracy between the following individuals: Defendant Shoemaker, the CEO of Defendant Lipman (Compl. ¶4); Defendant Purse, the CFO/CAO of Defendant Lipman (Compl. ¶8); Defendant Weisinger, a member of Defendant Lipman's Board of Directors (Compl. ¶9); and Defendant Parra, who was Defendant Lipman's Director of Human Resources during part of Plaintiff's employment and at the time of Plaintiff's termination of employment (Compl. ¶6). All of the above-referenced individuals are agents of the corporate defendant, who are identified in the Complaint as holding high-level, executive positions within Defendant Lipman's corporate organization. Because the "intracorporate conspiracy doctrine bars allegations of conspiracy between agents of the same organization," Plaintiff cannot state a cause of action for civil conspiracy amongst these individual Defendants. *Lapar,* 395 F.Supp.2d at 1157.

While the *Dickerson* court acknowledged the possibility of an exception to the intracorporate conspiracy doctrine where a corporate agent acts outside the course and scope of his employment, no such exception applies under the facts as alleged in the Complaint. *See Dickerson*, F.3d at 770. In other words, the exception only applies where the corporate agent has a personal stake that is divergent from the corporation's interests; however, in the instant case, Plaintiff's Complaint makes clear that the individual Defendants' interests were aligned with those of the corporation. Plaintiff alleges throughout the Complaint that the entire Lipman corporate enterprise was based upon a scheme of racketeering activities in the form of the employment of illegal workers. (*See e.g.*, Compl. ¶87 "Each RICO Defendant directly benefited from the pattern of racketeering activity as they received large yearly bonuses and/or profits derived from the use of cheap labor;" Compl. ¶115, "Lipman accepted and retained the benefits of the acts of racketeering activity, thereby ratifying the conduct of its managers, employees, and the members of the enterprise who assisted it in committing those acts of racketeering activity;" Compl. ¶117, "Lipman's unlawful conduct has allowed [the corporation] to earn or retain significant funds to which it is not entitled. . . . These savings contribute to Lipman's profit margins and provide the financial motive for Lipman's hiring of illegal workers;" and Compl. ¶121, referring to "Lipman's illegal practice, policy and activity of hiring and use of illegal aliens in farm labor"). Because Plaintiff alleges that the crux of the corporation's operations is the employment of illegal workers, the individual Defendants cannot be said to have been acting outside the course and scope of their agency by helping further the corporation's efforts with respect to the employment of

illegal workers. The individual Defendants' interests were, as alleged in the Complaint, directly aligned with those of the corporate entity. Thus, this narrow exception to the intracorporate conspiracy doctrine is inapplicable, and Count II should be dismissed with prejudice.

### B.    Counts III and IV, Plaintiff's Federal Civil RICO Claims, Are Properly Dismissed.

#### 1.    ELEMENTS OF A RICO 18 U.S.C. 1962(C) CLAIM.

In order to establish a federal civil RICO violation pursuant to Section 1962(c), the plaintiff "must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006) (internal quotations omitted).[2] These elements apply to both civil and criminal RICO claims. *Id*. "In civil cases, however, RICO plaintiffs must also satisfy the requirements of 18 U.S.C. § 1964(c). Section 1964(c) states that '[a]ny person injured in his business or property by reason of' RICO's substantive provisions has the right to 'recover threefold the damages he sustains . . . .' 18 U.S.C. § 1964(c). Thus, under §1964(c), civil RICO claimants, such as the plaintiff[] here, must show (1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Mohawk*, 465 3d at 1282-1283.

---

[2] Section 1962(c) of the Racketeer Influenced and Corrupt Organizations (RICO) Act provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

Plaintiff Bishop cannot, as a matter of law, establish an injury to business or property that was "*by reason of*" a substantive RICO violation.[3] "The 'by reason of' requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause." *Mohawk*, 465 F.3d at 1287. As the Eleventh Circuit has previously noted, the concepts of standing and proximate cause overlap significantly, and in the instant case, converge into a single, central question. *See Mohawk*, 341 F.3d at 1287, n. 4. That is, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added). As the Supreme Court stated in *Holmes v. Securities Investor Protection Corp.*, "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." 503 U.S. 258, 268-269 (1992). Only the most immediate victim of an alleged RICO predicate act has standing to vindicate the alleged harm; a plaintiff has no standing to sue for a predicate act which imposed a harm against a third party.

The *Anza* case is illustrative. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). In that case, the plaintiff corporation (Ideal Steel) alleged that the defendant/competitor company (owned by Joseph and Vincent Anza) failed to charge the

---

[3] "An act of racketeering is commonly referred to as a 'predicate act.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1292 (11th Cir. 2010) (citing *Mohawk*, 465 F.3d at 1283). In order to establish a viable RICO cause of action, Plaintiff must identify a predicate act that proximately caused the alleged harm. *See Mohawk*, 465 F. 3d at 1287, citing *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003)(cert. denied, 541 U.S. 1037) ("[O]ne or more of the predicate acts [in a RICO claim] must not only be the 'but for' cause of the injury, but the proximate cause as well") (citations omitted).

requisite New York state sales tax to cash-paying customers, which allowed the Anzas to reduce their prices, thereby gaining a competitive advantage over Ideal Steel. *Id.* at 454. In *Anza*, the alleged RICO predicate acts were the pattern of mail and wire fraud violations related to the Anzas' failure to pay state business taxes. Ideal Steel alleged that it was the victim of the Anzas' conduct and was harmed by the unfair competition. As the Supreme Court explained, although Ideal Steel asserted that it suffered its own harms as the result of the Anzas' failure to pay state sales tax, the "cause of Ideal's asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Anza*, 547 U.S. at 458. Fatal to Ideal Steel's RICO claim was the fact that the "direct victim of this conduct was the State of New York, not Ideal. It was the State that was being defrauded and the State that lost tax revenue as a result." *Id*. The *Anza* Court held that this connection was too attenuated to establish proximate cause and, citing *Holmes*, expressed concern of the speculative nature of the proceedings that would follow if Ideal were permitted to maintain its claim. *Id.* at 459. In short, the only appropriate victim to vindicate this claim would be the State of New York, not entities with potential secondary harms, for ***"[t]here is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly***." *Id*. at 460 (emphasis added).

    2.    PLAINTIFF'S ALLEGED HARM IS NOT DIRECTLY RELATED TO THE ALLEGED RICO PREDICATE ACTS.

Turning to the case at bar, the alleged harm to Plaintiff Bishop is, as in *Anza* and *Holmes*, too remote to establish proximate cause. Plaintiff alleges that the Defendants violated RICO by engaging in a pattern of racketeering activities in violation of various

8

federal immigration statutes. (Compl. ¶ 85 *et seq*.). The RICO statute recognizes, at 18 U.S.C. § 1961(1), the immigration crimes alleged by Plaintiff as predicate acts.[4]

Plaintiff alleges in his Complaint that, as the result of the Defendants' violations of the immigration laws, the Defendants "received large yearly bonuses and/or profits derived from the use of cheap labor in Lipman's farming operations that could not have been achieved with legal farming labor," and Defendants' "widespread employment of illegal workers has permitted Lipman to depress the wages for its hourly workers and to reduce the expenses it incurs as a result of worker's compensation claims." (Compl. ¶¶ 87, 117).

Plaintiff is clearly attempting to track the language of the 11th Circuit Court of Appeals in *Williams v. Mohawk Industrs., Inc.*, 465 F.3d 1277 (11th Cir. 2006); however, he stands on very different footing from the employee-plaintiffs in that case. In *Mohawk*, a class of current and former *hourly* employees sued their employer, alleging that it violated RICO by hiring illegal workers, thereby "reduc[ing] labor costs by depressing wages for its legal hourly employees and discouraging worker's compensation claims"

---

[4] 18 U.S.C. § 1961(1) defines "racketeering activity" to include, at subsection (B) violations of 18 U.S.C. § 1546 (relating to fraud and misuse of visas, permits, and other documents), and subsection (F) violations of the Immigration and Nationality Act, 8 U.S.C. 1324 (relating to bringing in and harboring certain aliens).
   Plaintiff alleges in his Complaint that Defendants committed the following RICO predicate acts: violating 8 U.S.C. § 1324(a)(3)(A) by "knowingly hir[ing] for employment at least 10 individuals with actual knowledge that the individuals" "are unauthorized aliens" brought into the United States illegally (Compl. ¶¶ 93-94); violating 8 U.S.C. § 1324(a)(1)(A)(iii) by knowingly or recklessly concealing or harboring illegal aliens by providing employment, submitting false social security paperwork, and providing housing and transportation (Compl. ¶¶ 95-96); violating 8 U.S.C. § 1324(a)(1)(A)(iv) by "'encourag[ing] or induc[ing] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law'" (Compl. ¶ 97, quoting 8 U.S.C. § 1324(a)(1)(A)(iv)); violating 8 U.S.C. § 1324(a)(1)(A)(v) by engaging in a conspiracy to commit or aid and abet any of the aforementioned acts (Compl. ¶98); and violating 18 U.S.C. §§ 1546(a) and (b) because of Defendants' alleged acceptance of identification documents which were not lawfully issued (Compl. ¶¶100-101).

among the class of plaintiff employees. *Mohawk*, 465 F.3d at 1280. This language is recited, almost verbatim, in Paragraph 117 of Plaintiff Bishop's Complaint. In *Mohawk*, the Eleventh Circuit held that the district court correctly denied the employer's Rule 12(b)(6) motion because the plaintiff-employees were the direct victims of the employer's alleged immigration law violations. The facts in *Mohawk* differ from the case at bar because in *Mohawk* there was no more directly-injured party who could have pursued the suit on behalf of the past and present class of hourly employees. Accordingly, as the Eleventh Circuit opined: "[t]he concerns expressed in *Anza* and *Holmes* are not present in this case. There is no more direct injured party who could bring suit." *Id.* at 1290. The Eleventh Circuit further emphasized the fact that the *Mohawk* complaint was narrowly confined to "the wages of legal workers of the *same employer*, Mohawk, *at the same manufacturing facilities* in the *same limited geographical area*," and it held that "*under the particular factual circumstances of this case,*" the plaintiffs satisfied the direct relationship requirement so as to survive a defense motion to dismiss. *Id*. at 1290 (emphasis added). Thus, under the narrowly prescribed set of facts in *Mohawk*, the harm was the depression of wages of legal, hourly employees in a narrow geographical area, and those hourly employees were deemed to have standing to sue their employer under RICO for the depression of their own wages.

Like the plaintiffs in *Mohawk*, Plaintiff Bishop alleges that the RICO predicate acts were immigration law violations, which have "permitted Lipman to depress the wages for its hourly workers and to reduce the expenses it incurs as a result of worker's compensation claims." (Compl. ¶87). The *Mohawk* analogy necessarily ends here.

Bishop was not an hourly employee claiming that his own wages were depressed by the alleged RICO predicate act. While the Complaint alleges that the Defendants employed illegal farm laborers, nowhere in the Complaint does Plaintiff allege that he was an hourly employee engaged in any capacity of farm labor—growing, harvesting, packing, or otherwise. Plaintiff was hired in 1997 as a salaried management employee ("Information Technology Manager") earning $42,000 per year, and his salary increased four-fold, to $168,000 per year, over the course of his employment and promotion to Chief Information Officer. (Compl. ¶¶37, 39). Thus, Plaintiff Bishop is clearly distinct from the class of hourly employees in *Mohawk*. Bishop is a former salaried manager who merely alleges that the employment of illegal farm laborers depressed the wages of other, unidentified third-parties. Plaintiff does not allege that the employment of illegal hourly farm laborers drove down the value of his own wages. Bishop is complaining of "harm flowing merely from the misfortunes visited upon a third person [himself] by the defendant's acts," and is thus "at too remote a distance to recover." *Holmes*, 503 U.S. 268-269.

Importantly, the only injury to *Plaintiff's own* "business or property" is not the depression of wages, but the termination of his employment. (*See* Compl. ¶116, "Bishop has suffered an injury to his 'business or property' by reason of Bishop's termination at Lipman"). However, the termination of Plaintiff's employment is not directly related to, and, as a matter of law is not the proximate cause of, the alleged hiring of illegal workers in order to depress labor costs related to legal farm laborers. The termination of Plaintiff's employment is, as the Supreme Court explained in *Anza*, simply too remote to

the alleged RICO predicate act of hiring illegal workers. As in *Anza*—where the state of New York was the appropriate party to seek recovery of unpaid taxes—third parties exist who have a more direct connection to the alleged predicate act. As in *Mohawk*, where the hourly employees whose wages were allegedly depressed were the appropriate parties to adjudicate the civil RICO claim, the appropriate plaintiffs to vindicate the alleged RICO violation in the instant case would be those persons whose wages were depressed—*i.e.*, hourly farm laborers employed by Lipman who are lawfully in this country. The termination of Plaintiff Bishop's employment simply does not flow directly from the alleged predicate acts. Thus, he cannot, as a matter of law, establish proximate cause, and Count III is properly dismissed.[5]

> 3. PLAINTIFF FAILS TO ESTABLISH A VIABLE CAUSE OF ACTION UNDER SECTION 1962(C), AND, BECAUSE HIS RICO CONSPIRACY COUNT ADDS NO ADDITIONAL SUBSTANTIVE ALLEGATIONS, PLAINTIFF'S CLAIM UNDER SECTION 1962(D) ALSO FAILS AS A MATTER OF LAW.

"While the Eleventh Circuit has not explicitly held that a plaintiff's failure to state a substantive RICO claim necessitates a failure of a conspiracy claim, it has held that where a plaintiff's failure to state a substantive claim fails and the conspiracy count lacks

---

[5] Plaintiff cannot establish proximate cause by conflating the alleged RICO predicate acts (*i.e.*, immigration violations) with those allegations of the Complaint asserted in support of his Florida Whistleblower's Act claim. Under the facts of the instant case, Plaintiff cannot seek recourse through the Sarbanes-Oxley Act whistleblower protections which might, under different facts, constitute separate RICO predicate acts. *See e.g., DeGuelle v. Camilli et al.*, 664 F.3d 192, 197 (7th Cir. 2011) (discussing predicate acts premised upon 18 U.S.C. § 1513, where the plaintiff-employee filed a Sarbanes-Oxley whistleblower complaint with the federal government and contacted federal agencies to report alleged tax fraud). There is simply *no* provision of Section 1513 applicable to the facts as alleged in the instant Complaint. The only remotely conceivable application of this statute is 18 U.S.C. § 1513(e); however, because that statutory provision requires that a complaint have been lodged with a law enforcement official, the allegations set forth in Plaintiff's Complaint fail to implicate a violation of Section 1513(e). Nowhere in the Complaint (see particularly Complaint paragraphs 46-80, captioned "Bishop's Objections to Lipman's Practices) does Plaintiff allege that he complained to a law enforcement entity of any kind. Accordingly, he cannot, as a matter of law, assert a viable civil RICO claim based upon a predicate act of witness retaliation in violation of Section 1513.

additional allegations, the conspiracy claim necessarily fails." *Levitan v. Patti et al.*, 2011 U.S. Dist. LEXIS 34979, *60 (N.D.Fla. 2011) (citing *Jackson v. Bellsouth Telecommunications, et al.*, 372 F.3d 1250, 1269 (11th Cir. 2004). "'To be guilty of conspiracy . . . [the] parties must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law.'" *Jackson,* 372 F.3d at 1269 (11th Cir. 2004), citing *United States v. Vaghela, 169 F.3d 729, 732 (11th Cir. 1999)*; *Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1199 (11th Cir. 2004)* ("If the underlying cause of action is not viable, the conspiracy claim must also fail." (internal quotation marks and citation omitted)).

In the instant case, as in both *Levitan* and *Jackson*, Plaintiff's Count IV (RICO conspiracy, pursuant to Section 1962(d)) adds nothing substantive to the allegations set forth in Plaintiff's Count III (brought pursuant to Section 1962(c)). Count IV of Plaintiff's Complaint merely makes conclusory recitations of the elements of a RICO conspiracy claim. However, as the Eleventh Circuit explained in *American Dental Assn. v. Cigna Corp.*, such formulaic recitations of law are insufficient to establish a RICO conspiracy claim:

> In analyzing the conspiracy claim under the plausibility standard, *Iqbal* instructs us that our first task is to eliminate any allegations in Plaintiffs' complaint that are merely legal conclusions. Plaintiffs offer conclusory statements such as "[d]efendants have not undertaken the above practices and activities in isolation, but instead have done so as part of a common scheme and conspiracy," and "[e]ach Defendant and member of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy, agreed to commit acts of fraud to relieve Class Plaintiffs of their rightful compensation, and actually committed such acts." These are the kinds of "formulaic recitations" of a conspiracy claim that the Court in *Twombly* and *Iqbal* said were insufficient. *See Twombly, 550 U.S. at 557*

(noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality")[.]

*American Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1293-1294 (11th Cir. 2010) (affirming district court's dismissal of RICO conspiracy claims) (internal citations omitted). In the instant case, as in *American Dental Association*, *Jackson*, and *Levitan*, Plaintiff's Count IV adds no substantive facts to the allegations alleged in Count III to be violative of RICO. Because Plaintiff's Complaint "simply concludes that the defendants 'conspired and confederated' to commit conduct which in itself does not constitute a RICO violation," Plaintiff's RICO conspiracy claim fails as a matter of law and are due to be dismissed. *Jackson*, 372 F.3d at 1269.

### C. Plaintiff Fails to State an Actionable Claim Pursuant to the Florida RICO Act.

For the same reasons that Plaintiff's federal RICO claims fail, his Florida RICO Act claims also fail as a matter of law and are properly dismissed with prejudice. "Because of the similarities between Florida and federal RICO acts, Florida looks to federal authority regarding the interpretation and application of its act. *Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc.*, 881 So.2d 565, 570 n.1 (Fla. 3d DCA 2004) (citing *Lugo v. State*, 845 So.2d 74, 96 n. 39 ("since 'Florida's RICO statute . . . is patterned after its federal counterpart . . . Florida courts may look to federal RICO decisions as persuasive authority," *Gross v. State*, 765 So.2d 39, 42 (Fla. 2000) ("given the similarity of the state and federal RICO statutes Florida courts have looked to the federal courts for guidance in construing RICO provisions")).

As previously explained herein, Plaintiff cannot, as a matter of law, establish damages to his business or property which flow directly from the alleged RICO predicate acts (*i.e.*, from the Defendants' alleged violations of federal immigration laws). Because Plaintiff cannot establish proximate cause—and thus lacks standing to sue pursuant to the federal RICO Act—he similarly lacks standing to pursue the same claims under the Florida-law counterpart. *See O'Malley v. St. Thomas Univ., Inc.,* 599 So.2d 999 (Fla. 3d DCA 1999) (affirming dismissal of Florida state RICO claims where plaintiff-employees were allegedly terminated for refusing to participate in alleged RICO violations, and citing the U.S. Eleventh Circuit Court of Appeals' previous ruling of lack of standing under federal RICO claims: "Although we recognize that federal decisions are not binding on this court . . . we nevertheless adopt the Eleventh Circuit's reasoning in *O'Malley v. O'Neill*, 887 F.2d at 1561: It may well be true that the commission of the predicate acts constituted "but for" cause of the firings. However, that tenuous a relation between the harm and the predicate acts is not sufficient to confer standing . . . RICO does not provide a remedy for every injury that may be traced to a predicate act"). Because Plaintiff's federal RICO claims fail, his Florida RICO Act claims also necessarily fail as a matter of law, and Count V should be dismissed with prejudice.

### III.  CONCLUSION.

For the reasons more fully expressed above, Defendants respectfully request that the Court grant their Motion to Dismiss and enter an Order dismissing, with prejudice, Count II (Alleged Civil Conspiracy), Count III (Alleged RICO Violation, pursuant to 18

U.S.C. § 1962(C)), Count IV (Alleged RICO Violation, pursuant to 18 U.S.C. § 1962(D)), and V (Alleged Violation of Florida RICO Act, pursuant to Fla. Stat. § 772.101) as well as any other further relief the Court deems just and appropriate.

DATED this 9th day of November, 2012.

Respectfully submitted,

**LITTLER MENDELSON, P.C.**
One Biscayne Tower, Suite 1500
Two South Biscayne Blvd.
Miami, FL 33131
Tel: (305) 400-7500
Fax: (305) 603-2552


By: */s/ Elaine W. Keyser*
    Jonathan A. Beckerman
    Florida Bar No. 568252
    E-mail: sforman@littler.com
    Elaine W. Keyser
    Florida Bar No. 0013606
    E-mail: ekeyser@littler.com

    Counsel for DEFENDANTS

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of November, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Elaine W. Keyser*
Elaine W. Keyser

# SERVICE LIST

Case No.: 2:12-cv-00562-JES-DNF

**COUNSEL FOR PLAINTIFF:**

Richard J. Swift, Esq.
Florida Bar No. 584861
Email: rswift@garlaw.com
Shaun M. Garry
Florida Bar No. 93412
Email: sgarry@garlaw.com
Garlick, Hilfiker & Swift, LLP
9115 Corsea del Fontana Way, Suite 100
Naples, FL 34109
Tel: 239.597.7088
Fax: 239.597.6984
 [Via Notice of Electronic Filing]


**COUNSEL FOR DEFENDANT:**

Jonathan A. Beckerman, Esq.
Florida Bar No. 568252
Email: jabeckerman@littler.com
Elaine W. Keyser, Esq.
E-mail:  ekeyser@littler.com
Florida Bar No. 13606
Littler Mendelson, P.C.
One Biscayne Tower
2 South Biscayne Blvd., Ste. 1500
Miami, Florida  33131
Tel: (305) 400-7500
Fax: (305) 603-2552
[Via Notice of Electronic Filing]


Firmwide:115440854.2 069383.1003