```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                     FORT MYERS DIVISION
```

BRIAN BISHOP,

                Plaintiff,

vs.                                  Case No.  2:12-cv-562-FtM-29DNF

LIPMAN AND LIPMAN, INC., LFC
ENTERPRISES, INC., LFC AGRICULTURAL
SERVICES, INC., FARM OP, INC., LFC
MANAGEMENT SERVICES, INC., ROBERT
KENT SHOEMAKER, JR., LARRY LIPMAN,
TOBY PURSE, JAMIE WILLIAMS, MAX
JAIME WEISINGER, and HERNAN PARRA,

                Defendant.
_____

## OPINION AND ORDER

    This matter comes before the Court on Defendants' Motion to Dismiss Counts II, III, IV, and V of the Complaint (Doc. #18) filed on November 9, 2012.  Plaintiff filed a response on November 21, 2012.  (Doc. #23.)  For the reasons set forth below, the motion is granted.

### I.

    Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted).  To survive dismissal, the factual allegations must be

"plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012)(internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## II.

Plaintiff Brian Bishop (Bishop or plaintiff) initiated this action against various interrelated companies including Lipman and

Lipman, Inc., LFC Enterprises, Inc., Agricultural Services, Inc., Farm Op, Inc., and LFC Management Services Inc. (collectively, Lipman) as well as individually named "high powered" employees of Lipman, including Robert Kent Shoemaker Jr., Larry Lipman, Toby Purse, Jamie Williams, Max Jaime Weisinger, and Hernan Parra (collectively, defendants) on October 11, 2012. The Complaint alleges the following: Plaintiff was an employee of Lipman and served as Chief Information Officer. Lipman is the United States' largest field tomato farmer and employs thousands of farm laborers to grow and harvest the tomatoes.

In order to form a crew of farming laborers during a growing season, Lipman pays "crew leaders" to find farm laborers. The "crew leaders" are not Lipman employees, but are paid based on their ability to provide a sufficient number of laborers. The laborers are hired by Lipman and provided housing by the company near the farming facilities.

In addition to its farming endeavors, Lipman also operates packing houses. In the packing houses, Lipman has implemented technology that uses biometric scanners to ensure that the workers at the packing houses are legal employees. Although Lipman uses this technology at its packing houses, it does not use this technology for its farming operations.

Throughout his employment with Lipman, plaintiff became aware of various violations of Section 274 of the Immigration and

Nationality Act (INA), codified at 8 U.S.C. § 1324(a). Plaintiff alleges that Lipman submitted employee social security numbers to the Federal Government on required employment paperwork that did not match the names of the employees actually working for Lipman, and utilized "coyotes", described as "an individual who smuggles illegal migrant workers into the United States from Mexico for money" (doc. #1, ¶51), to supply the additional need for laborers when there were labor shortages during a farming season.

Bishop made several verbal suggestions to Lipman, recommending that the biometric scanning system used in the packing houses be utilized in the fields to help ensure that illegal immigrants were not employed as field laborers. Bishop was subsequently excluded from company meetings.

On February 2, 2012, Bishop sent an e-mail to Toby Purse (Purse), the Chief Financial Officer/Chief Administrative Officer of Lipman, and Hernan Parra (Parra), the Director of Human Resources. The e-mail voiced Bishop's concerns about Lipman's illegal work force and reiterated his verbal recommendations. Two business days later, Bishop was called into a meeting with Parra and Purse and was terminated. Plaintiff was offered a "Confidential Separation Agreement and General Release" (the Settlement Agreement). Under the terms of the Settlement Agreement, Bishop would be retained as a consultant for six (6) months and provided with health insurance in exchange for keeping

his concerns about the illegal work force confidential and "refrain[ing] from all conduct, verbal or otherwise, that disparages or damages or could disparage or damage the reputation, goodwill, or standing in the community of [Lipman] or any of the Released Parties."  (Doc. #1, ¶83.)  Bishop did not sign the settlement agreement.

### III.

Plaintiff initiated this action asserting claims under the Florida Whistleblower Statute (Count I), civil conspiracy (Count II), the federal Racketeer Influenced and Corrupt Organizations Act (RICO)(Counts III and IV), and the Florida RICO statute (Count V). Defendants seek to dismiss Counts II through V of the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**A. Count II**

Count II asserts a cause of action for civil conspiracy against defendants Robert Kent Shoemaker, Toby Purse, Max Jaime Weisinger, and Hernan Parra (collectively, the civil conspiracy defendants).  Count II alleges that the civil conspiracy defendants, along with other unknown co-conspirators, conspired to terminate plaintiff in retaliation for his objections to defendants' alleged INA violations.  The conspiracy defendants assert that Count II fails under the intracorporate conspiracy doctrine because each of the alleged co-conspirators is an employee of the same company.  Plaintiff responds that the doctrine does not

apply because the "crew leaders" were part of the conspiracy and are not employees of Lipman, the conspiracy claim implicates unknown co-conspirators which may include persons not employed by Lipman, and defendants are subject to criminal liability for their conspiracy, which renders the intracorporate doctrine inapplicable.

The Complaint alleges two different types of conspiracies. Count II alleges a civil conspiracy under Florida law in which the purpose of the conspiracy was to terminate plaintiff in retaliation for his opposition to plaintiff's alleged INA violations. Count IV, on the other hand, asserts a claim for a conspiracy to commit RICO predicate acts in violation of 18 U.S.C. § 1962(d). Defendants' motion argues that the intracorporate doctrine bars Count II, not Count IV.

"A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." <u>Charles v. Fla. Foreclosure Placement Ctr., LLC</u>, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008) (citations omitted).

> Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. This doctrine stems from basic agency principles that attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor.

Dickerson v. Alachua Cnty. Comm'n, 200 F.3d 761, 767 (11th Cir. 2000) (internal quotations and citations omitted). This rule applies unless an agent of the corporation "has a personal stake in the activities that are separate and distinct from the corporation's interest." Cedar Hills Props. Corp. v. E. Fed. Corp., 575 So. 2d 673, 676 (Fla. 1st DCA 1991).

Plaintiff's arguments regarding the applicability of the intracorporate doctrine appear to relate to its applicability to Count IV, as plaintiff focuses on the RICO predicate acts, their potential for criminal liability, and the involvement of the crew leaders in the alleged predicate acts. Count II, however, does not allege a conspiracy to commit RICO violations, but instead asserts a conspiracy to retaliate against plaintiff.

There are no allegations relevant to Count II that link the non-employee crew leaders to a conspiracy to retaliate against the plaintiff. Further, the enumerated retaliatory purpose of the conspiracy alleged in Count II is not criminal. Finally, there is no case law that stands for the proposition that alleging "unknown co-conspirators" bars the application of the intracorporate doctrine. The factual allegations pertaining to Count II can only be fairly read to implicate Lipman employees, and there are no plausible allegations which suggest that these employees had a personal stake in the retaliation conspiracy. See Cedar Hills

Props. Corp., 575 So. 2d at 676. As such, Count II is barred by the intracorporate doctrine and will be dismissed.

**B.  Count III**

Count III asserts a claim against all twelve (12) defendants for violations of 18 U.S.C. § 1962(c), a provision of federal RICO. The federal RICO laws provide civil and criminal liability for persons engaged in a pattern of racketeering activity. See 18 U.S.C. §§ 1962-1964. To state a claim for a RICO violation, a plaintiff must allege: "(1) a violation of section 1962; (2) injury to business or property; and (3) that the violation caused the injury." Southeast Laborers Health and Welfare Fund v. Bayer Corp., 444 Fed. App'x 401, 409 (11th Cir. 2011) quoting Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). With respect to the first element, a violation of § 1962, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Id. quoting Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282 (11th Cir. 2006).

Civil RICO plaintiffs "must also satisfy the requirements of 18 U.S.C. § 1964(c)." Southeast Laborers, 444 Fed. App'x at 409, quoting Williams, 465 F.3d at 1282. Under this provision, "[a]ny person injured in his business or property *by reason of* a violation of section 1962 of this chapter may sue therefor." 18 U.S.C. § 1964(c)(emphasis added). The Supreme Court set forth the standard of establishing the "by reason of" element of section 1964(c) in

Holmes v. Sec. Investor Protection Corp., 503 U.S. 258 (1992). Therein, the Supreme Court held that a "plaintiff must demonstrate that the defendant's violation was not only the "but for" cause of the plaintiff's injury but also its proximate cause." Southeast Laborers, 444 Fed. App'x at 409, citing Holmes, 503 U.S. at 268.

The defendants assert that plaintiff cannot meet the requirements of Section 1964(c), and therefore cannot establish the causation element of his RICO claim. Neither party makes any argument regarding whether the plaintiff has adequately pled that the alleged RICO violations were the "but for" cause of his injury. Instead, both parties focus their arguments on whether the alleged RICO violations were the "proximate cause" of plaintiff's alleged injury.[1]

The Supreme Court has said that, "[p]roximate cause for RICO purposes . . . should be evaluated in light of its common-law foundations; proximate cause thus requires some direct relation between the injury asserted and the injurious conduct alleged. A link that is too remote, purely contingent, or indirect is insufficient." Hemi Grp. LLC v. City of New York, New York, 559 U.S. 1 (2010) quoting Holmes, 503 U.S. at 1311 (internal quotations and alterations omitted).

---

[1]Because the Court finds that plaintiff has failed to sufficiently allege that his injury was proximately caused by any alleged RICO predicate act, the Court need not address whether the plaintiff has otherwise established "but for" causation.

Plaintiff has asserted that the defendants committed the following RICO predicate acts: (1) violating 8 U.S.C. § 1324(a)(3)(A) by hiring at least ten individuals with actual knowledge that the individuals are aliens; (2) violating 8 U.S.C. § 1324(a)(1)(A)(iv) by encouraging or inducing an alien to come to, enter, or reside in the United States either knowing or in reckless disregard that this is in violation of law; (3) violating 8 U.S.C. § 1324(a)(I)(A)(iii) by concealing, harboring, or shielding from detection, or attempting to conceal, harbor, or shield aliens from detection; (4) violating 8 U.S.C. § 1324(a)(1)(A)(v) by engaging in a conspiracy to commit or aid and abet any INA violation; (4) violating 18 U.S.C. § 1546(a) by accepting identification documents and other employment documents that they knew, or should have known, were not lawfully issued, were false, and or were obtained by false statements; and (5) 18 U.S.C. § 1546(b) by using identification documents that defendants knew were false or not lawfully issued in order to falsely verify the eligibility of its employees and recording information from these false and fraudulent documents on I-9 forms.

Defendants assert that plaintiff has not pled, and cannot otherwise establish, that any of these five (5) alleged predicate acts were the proximate cause of his termination. Plaintiff responds that the third alleged predicate act, namely the defendants alleged concealment of aliens from detection, was the

proximate cause of his injury. In particular, plaintiff asserts that the defendant's settlement offer during his termination meeting was itself a violation of 8 U.S.C. § 1324(a)(I)(A)(iii) because the Settlement Offer was an attempt to conceal illegal aliens from detection because it required plaintiff to keep his knowledge of the INA violations confidential. The Court is not persuaded by plaintiff's argument.

There is nothing in the Complaint which suggests that the offer of the Settlement Agreement, or plaintiff's refusal to accept it, resulted in Bishop's termination. Plaintiff does <u>not</u> allege that had he accepted the Settlement Agreement, he would have retained his position with Lipman. Instead, regardless of whether or not plaintiff accepted the Settlement Agreement, he would have been terminated from Lipman. The Settlement Agreement only provided an opportunity for the plaintiff to work as a consultant to Lipman for a period of <u>six months</u>. Because plaintiff's termination from Lipman was not dependent on his failure to sign the Settlement Agreement, this alleged violation of 8 U.S.C. § 1324(a)(I)(A)(ii) was not a proximate cause of plaintiff's termination.

Plaintiff does not assert that any of the other alleged predicate acts were the proximate cause of his injury, and the Court agrees. The Complaint does not allege that the hiring of illegal workers in violation of 8 U.S.C. § 1324(a)(3)(A), the

encouragement and inducement of illegal workers in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), the conspiracy in violation of 8 U.S.C. § 1324(a)(1)(A)(v), or that the 18 U.S.C. §§ 1546(a) and (b) documentary violations had any effect on the terms or conditions of plaintiff's employment or otherwise proximately caused plaintiff's injury. Instead, the allegations of the Complaint demonstrate that it was plaintiff's objections to these alleged violations that resulted in his termination from Lipman, not the INA violations themselves. The motion to dismiss Count III is granted.

**C. Count IV**

Count IV of the Complaint asserts a cause of action against all defendants pursuant to another provision of RICO, 18 U.S.C. § 1962(d). This provision makes it "unlawful for any person to conspire to violate" RICO's criminal prohibitions. 18 U.S.C. § 1962(d). "The touchstone of liability is an agreement to participate in a RICO conspiracy, which may be shown in two ways: (1) showing an agreement on the overall objective of the conspiracy, or (2) showing that a defendant agreed to commit personally two predicate acts, thereby agreeing to participate in a 'single objective.'" U.S. v. Browne, 505 F.3d 1229, 1264 (11th Cir. 2007) (quoting U.S. v. Abbell, 271 F.3d 1286, 1299 (11th Cir. 2001)). Additionally:

> If the [plaintiff] can prove an agreement on an overall objective, it need not prove a defendant personally agreed to commit two predicate acts. . . . In the absence of direct evidence of an agreement on an overall

> objective, the [plaintiff] may prove such an agreement through inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme,. . . amounting to evidence that each defendant necessarily must have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering.

Browne, 505 F.3d at 1264 (internal quotation marks and citation omitted).

Defendants assert that because Count III fails, Count IV should also be dismissed. In addition, defendants assert that Count IV provides nothing more than a formulaic recitation of the elements and contains no factual allegations that support the claim. Plaintiff disagrees, and alleges that the Settlement Agreement was an overt act in furtherance of a conspiracy to violate 8 U.S.C. § 1324(a)(I)(A)(v).

Although several circuits have found that if a plaintiff fails to state a claim of a primary RICO violation, the plaintiff's civil RICO conspiracy claim necessarily fails, see GE Invest. Private Placement Partners II v. Parker, 247 F.3d 543, 551 n. 2 (4th Cir. 2001); Efron v. Embassy Suites, P.R., Inc., 223 F.3d 12, 21 (1st Cir. 2000); Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998); Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3rd Cir. 1993); Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 n. 8 (9th Cir. 1992); Danielsen v. Burnside-Ott Aviation Training Ctr., Inc., 941 F.2d 1220, 1232 (D.C. Cir. 1991);

Craighead v. E.F. Hutton & Co., 899 F.2d 485, 495 (6th Cir. 1990); In re Edwards, 872 F.2d 347, 352 (10th Cir. 1989), neither the Eleventh Circuit nor the Supreme Court have addressed the issue. (See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1296 n.6 (11th Cir. 2010)(noting that the 11th Circuit has not addressed the issue, and declining to address it because the conspiracy count failed under Twombly and Iqbal's plausibility standard)).

The Court need not resolve whether failure to state a substantive RICO claim in Count III necessarily results in the dismissal of Count IV.  Plaintiff's allegations with respect to Count IV are nothing more than a formulaic recitation of the elements of a RICO conspiracy claim and lack any factual allegations in support.  Most notably, plaintiff fails to plead facts that demonstrate an agreement among the twelve (12) defendants.  Instead, plaintiff provides only the conclusory allegation that "[t]he RICO Defendants, through an agreement to commit two or more predicate acts, conspired to conduct or participate in the conduct of an enterprise, Lipman, through a pattern of racketeering activity in violation of 18 U.S.C. § 1926(d)."  (Doc. #1, ¶142.)  Nothing within Count IV itself, or any of the facts incorporated by reference (see id. at ¶141) provide a single factual allegation that support this assertion.  The motion to dismiss Count IV is granted.

**D.  Count V**

Count V asserts a RICO violation under Fla. Stat. § 772.103(3). The Florida RICO statute is patterned after the Federal RICO statute and Florida RICO cases follow Federal RICO cases. Therefore, the analysis of Federal RICO claims is equally applicable to the Florida RICO claims. Ferrell v. Drubin, 311 Fed. App'x 253, n. 5 (11th Cir. 2009) citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1263-64 (11th Cir. 2004). Because the Court has found that both of plaintiff's Federal RICO claims fail, the motion to dismiss Count V is granted.

**E.  Count I**

Defendants make no argument with respect to Count I, which asserts a claim under the Florida Whistleblower's Statute. Because the Court has dismissed all of plaintiff's Federal claims, the parties are not diverse, the remaining issues solely involve matters of state law, and the case is in its early stages, the Court declines to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, Count I is dismissed.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss Counts II, III, IV, and V of the Complaint (Doc. #18) is **GRANTED** and Counts II, III, IV, and V of the Complaint are **DISMISSED** without prejudice.

2. The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), and therefore Count I is also **DISMISSED** without prejudice.

3. The Clerk shall enter judgment accordingly, terminate any pending deadlines and motions, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this  21st  day of May, 2013.

JOHN E. STEELE
United States District Judge

Copies:

Counsel of record